**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ROBERT A. DOANE,** ) | **Civil Action No._____** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **SOLAR XCHANGE, LLC.,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **MARK GETTS,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

<u>**COMPLAINT**</u>
**(with jury demand endorsed hereon)**

Now comes Plaintiff, **ROBERT A. DOANE**, by and through undersigned counsel, and

for his Complaint against Defendants **SOLAR XCHANGE, LLC**., and **MARK GETTS**, states

and avers as follows:

<u>**PREMIMINARY STATEMENT**</u>

1.       This action involves a scheme to generate solar energy leads through widespread illegal

telemarketing activities.  Plaintiff Robert A. Doane ("Plaintiff" or "Doane") brings this action

against Solar Xchange, LLC. and its owner and operator, Mark Getts, for their violations of the

Telephone Consumer Protection Act, 47 U.S.C., § 227 et seq. (the "TCPA") and the

Massachusetts Consumer Protection Act, M.G.L., c. 93A.  Specifically, to schedule solar

appointments, Defendants illegally placed tens of millions of calls to consumer phone numbers

on the National Do Not Call Registry (the "Do Not Call Registry" or "Registry") maintained by

the Federal Tade Commission ("FTC") without the consumers' prior express written consent,

using fictitious names and spoofed numbers.  Plaintiff, as one of the Defendants' millions of

victims, seeks actual and statutory damages and a permanent injunction enjoining Defendants

from continuing violations of the TCPA and/or from conducting telemarketing activities to

consumers residing in the Commonwealth of Massachusetts.

## THE PARTIES

2.      Plaintiff Robert A. Doane is an individual and a resident of Massachusetts, residing at

103 Prospect Street, Wakefield, Middlesex County, Massachusetts 01880.

3.      Defendant Solar Xchange LLC ("Solar Xchange"), also doing business as Energy

Exchange, is a New Jersey limited liability company with its principal place of business located

at 214 Cherry Street, Voorhees, New Jersey 08043.  At all relevant times, to generate solar leads,

Solar Xchange operated call centers in New Jersey, Florida, and Texas, from which they placed

millions of calls to consumers, including Plaintiff, and scheduled appointments with potential

customers at their homes, including Plaintiff, for the purpose of selling solar energy products and

services.  At all relevant times, Solar Xchange transacted business in this District and throughout

the United States.

4.      Defendant Mark Getts ("Getts") is, and was at all relevant times, the sole owner and

Chief Executive Officer of Solar Xchange and is a resident of New Jersey.  At all times relevant

to this Complaint, acting alone and in concert with others, Getts formulated, directed, controlled,

had the authority to control, and actively and personally participated in the illegal acts and

practices set forth in this Complaint.  Among other things, Getts wrote the scripts used by Solar

Xchange's telemarketers, devised, implemented, and directed Solar Xchange's illegal

telemarketing practices described herein, oversaw contracts with telephone service providers,

and managed Solar Xchange's finances and bank accounts.  Defendant Getts, in connection with

the matters alleged herein and at all relevant times, transacted business in this District and throughout the United States.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves violations of the TCPA. *Mims v. Arrow Fin. Servs., LLC.*, 132 S. Ct. 740 (2012).  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law causes of action.

6.     In the alternative, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## STATEMENT OF OPERATIVE FACTS

### A.     Defendants' Illegal Business Activities

8.     In 2018, Solar Xchange's predecessor Solar Exchange, LLC. ("Solar Exchange") was formed as a New Jersey limited liability company by Anthony Fazio, an associate of Joseph LaForte of Philadelphia.[1]  In 2018, Fazio hired Getts as a telemarketer to generate pre-set solar appointments.

---

[1] From 2018 through 2020, Solar Exchange was owned and controlled by Lisa McElhone, the wife of Joseph LaForte.  In 2020, McElhone and LaForte were sued in a civil action by the SEC related to their business operations which resulted in a receivership taking control of their companies.  Following the filing of the lawsuit, Solar Exchange was supposedly dissolved and Getts continued operations under the name Solar Xchange.  In 2023, federal prosecutors charged McElhone, LaForte and their associates with 63 criminal counts, ranging from securities fraud and loan-sharking to extortion and tax evasion, related to their business operations.

9.      By August of 2018, Getts had rapidly risen through the ranks at Solar Exchange and served as Solar Exchange's Director of Operations.

10.     After experiencing legal difficulties in the summer of 2020, Solar Exchange was compelled to dissolve, and without missing a beat, Getts changed the name of the company from Solar Exchange to Solar Xchange and continued business operations using the new name. Getts thereafter formed Solar Xchange as a New Jersey limited liability company and continued the business of Solar Exchange as its successor in interest.

11.     Since Solar Xchange's inception, Getts served as Solar Xchange's Chief Executive Officer and, as set forth above, exercised pervasive control and direction over Solar Xchange.

12.     At all relevant times, Solar Xchange and Getts, like Solar Exchange, contracted with and was paid by Vision Solar, LLC ("Vision Solar") to initiate outbound telephone calls to consumers throughout the United States, including consumers in this District, to induce the purchase of solar panels and installation services from Vision Solar.

13.     During these telemarketing calls, Solar Xchange asked consumers scripted questions to assess their interest in and eligibility for a home solar energy system. If the consumer expressed interest and met the eligibility requirements, Solar Xchange scheduled an appointment with the consumer for an at-home consultation. Solar Xchange then forwarded that consumer's appointment information to Vision Solar, who would send a salesperson to the consumer's home at the appointed time.

14.     During these telemarketing calls, Solar Xchange often misleadingly identified itself as "Energy Exchange"[2] and other fictitious names to conceal its identity and attempt to insulate itself from liability.

---

[2] As Getts admitted at his deposition, Energy Exchange was not a registered d/b/a for Solar Xchange.

15.     In many instances, Solar Xchange, at the direction of Getts, falsely told consumers that it was affiliated with a government program or electric utility company.  Specifically, Solar Xchange falsely told consumers that Solar Xchange was "required" to call the consumer due to a state mandate or falsely indicated that Solar Xchange was working in "partnership" with the consumer's local utility company.

16.     Solar Xchange also made various false or unsubstantiated representations about how consumers can save money on their electric bills by installing solar panels on their homes with no money down, such as falsely telling consumers that the consumers' monthly payment for solar panels replaces their current electric bill and provides a fixed rate that is "up to 30% lower" than their current electric bills.

17.     In order to attempt to further deceive consumers into believing that Solar Xchange was associated with the customers' local utility company, Solar Xchange typically did not identify Vision Solar as the entity that would be providing the at-home consultation.

18.     Since at least 2020 and as part of their campaign to market residential solar energy systems, Defendants initiated hundreds of millions of outbound telemarketing calls to consumers whose phone numbers were on the Do Not Call Registry.[3]

19.     For millions of these consumers whose telephone numbers were on the Do Not Call Registry and who received these telemarketing calls, Solar Xchange did not have these consumers' prior express written consent to receive telemarketing calls.

20.     In many instances, consumers who received telemarketing calls from Solar Xchange requested that Solar Xchange stop calling, yet Solar Xchange continued to

---

[3] From November 18, 2019 to November 15, 2020 alone, Defendants placed **117,340,585** outbound predictively dialed calls to **7,267,361** unique numbers.

call. Further, Solar Xchange often made rude or harassing comments to consumers who asked

not to be called.

21. As a result of Defendants' illegal practices, Solar Xchange has received numerous

customer complaints, including, by way of example, the following Google reviews:



Douglas Plummer
2 reviews · 11 photos
★☆☆☆☆  9 months ago

They break the law and spam call people on the do not call list saying that they are Energy Exchange. When you tell them you are on the do not call list, they lie and say you are not. I verified I have been on the do not call list since 2018.

Not an ethical company.

John Hayman
3 reviews
★☆☆☆☆  2 years ago

Critical: Responsiveness

Where do I begin. They told me their name was Energy Exchange. Looked on the internet and there was nothing. Another person said he'd send the website address. Never did. Next guy told my their "domain" had been done for a month. The strongly implied that they were working with my energy company. Energy company never heard of them. I swear they also were working with the state of Massachusetts. Couldn't find evidence of that. As you can see I called a number of times. I kept calling because I wanted more information. They kept saying that they would give me all the info I needed at the in home inspection. I finally canceled the visit and somebody still showed up. Tried to get me to change my mind. Sent him on his way.



Ronnie Sutton
1 review
★☆☆☆☆  2 years ago

Critical: Professionalism, Quality, Value

This place is a WHOLE SCAM! For starters they introduce them self as a fake company (ENERY EXCHANGE) Then they say there're working alongside you energy provider which is lie number 2. They have a list of energy providers in the area  that might be your energy provider but they don't really know. Lie number 3 is that they just want to give you information on the clean energy Mandate but what there're really trying to do is set you up with another FAKE solar company (VISION SOLAR ) that tries to lock you into a solar panel deal. The only truth to them is that they're a BIG SCAM ..To SOLAR EXCHANGE - mail that!



**Clifford "Kip" Brautigan**
Local Guide · 13 reviews · 4 photos

⋮

★★★★★   3 years ago

**Critical:** Professionalism, Quality, Responsiveness, Value

Called me today - told them wasn't interested....They said they were working in conjunction with Central Jersey Power and Light. They said their name was "Energy Exchange", where in fact they were "Solar Energy Exchange". They lied to me when I asked if they were a solar company. I asked for the number they were calling from, they couldn't. I asked who their contact was at CJP&L, they would not give me that number. THIS IS A COMPANY THAT I SHOULD TRUST?? NO WAY!!! HANG UP ON THEM AS THEY ARE A SHAM....



22.     As part of Defendants' telemarketing campaign, Solar Xchange also made thousands of telephone calls that repeatedly or continuously caused consumers' phones to ring.  By way of example, Solar Xchange called at least 150,000 different phone numbers over 50 times and called at least 12,000 phone numbers over 100 times.  Many of these consumers received multiple calls almost every day for one or more months, with some consumers regularly receiving 5 or more calls per day.

23.     Defendants are well aware of their obligations with respect to the Do Not Call Registry and the TCPA.  Among other things:

a.     Vision Solar's contracts with Solar Xchange, which Getts signed, required Solar Xchange to comply with the TCPA and all regulations promulgated thereunder.

b.     Solar Xchange's contract with Five9, Inc., one of its telephone service providers, which Getts likewise signed, required Solar Xchange to comply with all federal, state, and/or local laws in connection with its use of telephone services, including compliance with the Do Not Call Registry.  Defendant Getts also corresponded directly with Five9, Inc. about Solar Xchange's obligations and its compliance with FTC rules.

c.     Solar Xchange only submitted some—but not all—of the telephone

numbers through a third-party scrubbing service for scrubbing against various do-not-call registries, including the Do Not Call Registry, to make it appear that Solar Xchange was attentive to compliance when it was not.

24.     Between August 30, 2021, and June 16, 2022, Solar Xchange placed more than 50 percent of its calls to numbers on the Do Not Call Registry and consumers whose numbers are listed on the Do Not Call Registry.

25.     Defendants' illegal practices led to a filing by the U.S. Department of Justice in the United States District Court for the District of Arizona, styled *United States of America, et al. v. Vision Solar et al.*, and being Civil Action No: 2:23-cv-01387-DGC, ("Enforcement Action") seeking a permanent injunction, civil penalties, and other relief, pursuant to Sections 5(a), 5(m)(1)(A), 13(b), 19, and 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, and 56(a)(1), Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105, the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 44-1534 (the "ACFA"), and the Arizona Telephone Solicitations Act, A.R.S. §§ 44-1271 to 44-1282 (the "ATSA").

26.     As a result of the Enforcement Action, Defendants were fined $13,859,283.00 and were permanently restrained and enjoined from engaging in, causing others to engage in, or assisting others engaging in initiating any outbound telephone calls to any number listed on the National Do Not Call Registry without evidence of prior express written consent and Defendants were likewise restrained and enjoined from annoying and harassing consumers with repeated telemarketing calls.  A true copy of the "Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief as to Defendants Solar Xchange, LLC. and Mark Getts" issued in the Enforcement Action is attached herewith as **Exhibit A** and incorporated by reference.

**B.      Illegal and Harassing Calls to Plaintiff**

27.     Plaintiff is an individual who suffers from chronic pain and sleep disorders, and often sleeps during the day.  Plaintiff is also the trustee of several family trusts, and at the time of the calls complained of was the primary caretaker for elderly parents.  In these capacities, Plaintiff was required to keep his cellphone on his person at all times so he could attend to the needs of the trusts and direct the care of his parents.

28.     At all times relevant, Plaintiff's cell phone number, XXX-XXX-6577 ("Cell Phone") has been registered to the Do Not Call Registry and the Massachusetts Do Not Call registry, as Plaintiff does not wish to be disturbed and harassed by telemarketers.

29.     During October 2020, Plaintiff received, without his prior express written consent, not less than ten (10) telemarketing calls ("Unsolicited Calls") to his Cell Phone, using prerecorded messages and caller-ID "spoofing" from Solar Xchange.

30.     All of the Unsolicited Calls made to Plaintiff had the same fact pattern, i.e., the calls were made with what were later determined to be inoperative or invalid numbers, and upon picking up there was a delay and a click before an agent came on the line.  Additionally, the agents who came on the line each appeared to be reading from the same script.

31.     Upon Plaintiff answering the Unsolicited Calls, the agents asked Plaintiff for his name and address, indicating they did not know his name or address prior to calling.  This was evidence of the fact that the agents were "cold calling."

32.     During the Unsolicited Calls, Plaintiff requested the agent's do-not-call policy.  These requests were met with disconnection and, despite Plaintiff's demands that the Unsolicited Calls stop, the Unsolicited Calls continued.

33.     When attempts were later made by Plaintiff to call the numbers from which the

Unsolicited Calls appear to have been made, these attempts consistently resulted in an indication

that the numbers were inoperative or invalid (such as a recording stating that the number

appearing on Plaintiff's caller identification display ("Caller ID") was not in service).

34.     By way of example, on October 16, 2020, Plaintiff received an Unsolicited Call to his

Cell Phone from 781-773-4903, at 4:49 p.m.  When Plaintiff answered, after a pause and audible

click, an agent identifying himself as Jordan came on the line.  The agent, who claimed that he

was contacting homeowners regarding solar service, utilized the same script as earlier calls and

asked the same questions.  The agent asked for Plaintiff's email address, and Plaintiff refused to

provide it.  Plaintiff asked if the agent could be reached at the number on Plaintiff's Caller ID,

after which the agent terminated the call.  Plaintiff never provided his prior consent to be called,

but the Unsolicited Calls continued nonetheless.

35.     On October 21, 2020, at 10:04 a.m., Plaintiff received an Unsolicited Call on the Cell

Phone from a number appearing as 339-499-4100.  Plaintiff, upon picking up the call, said

"hello" several times, and no one responded.  As was the case with the previous Unsolicited

Calls, Plaintiff did not provide his prior consent to receive this call.

36.     On October 22, 2020, at 10:06 a.m., Plaintiff received another call from the same number,

339-499-4100.  Plaintiff, upon answering the call, said "hello," and after a pause and audible

click, an agent came on the line and identified herself as "Ashley."

37.     On this call, Ashley, without revealing the identity of the company on whose behalf she

was calling, falsely stated that her company works "alongside Eversource" and represented that

the reason for the call was because Massachusetts passed a clean energy mandate program giving

homeowners the option to go solar with no money out of pocket.  Ashley falsely claimed the

program would lower homeowners' electric bills "by 40% every month," and said that her company was reaching out to see if Plaintiff qualified.

38.     During the conversation with Plaintiff, Ashley suggested she had access to Plaintiff's electricity usage information with Eversource at his 103 Prospect Street, Wakefield, Massachusetts residence.  Plaintiff requested that Ashley identify the company she was with, to which she falsely replied, "[w]e're subcontracted by Eversource, and our company is called 'Energy Exchange.'"  Ashley then falsely represented that "because of the clean energy mandate, Eversource has to produce 30% more clean energy by next year or they will get a fine, so they have us reaching out to the homeowners to send free information about solar and provide them with a free solar analysis."

39.     A short time later, Ashley was displaced from the call by another individual who identified himself as "Calvin."  Calvin represented that he was Ashley's supervisor.  Calvin confirmed the information Plaintiff provided to Ashley and then asked for a date and time to set an appointment.  For the sole purpose of confirming that Solar Xchange was behind the Unsolicited Calls at issue, Plaintiff agreed to Saturday, October 24, 2020, at 10:00 a.m.  Calvin asked to have Plaintiff's latest electric bill for the appointment to check energy usage, but also said that if it was not available, they could "pull it up on the tablet."[4]  Calvin indicated he would send Plaintiff confirmation and Plaintiff provided his email address to Calvin for that purpose.

40.     At no time did Calvin disclose he was calling on behalf of Solar Xchange or Vision Solar.

41.     Plaintiff asked Calvin if the number appearing on the Caller ID could be called back. After Plaintiff read the last seven digits of the number appearing on Plaintiff's Caller ID, "499-4100," to Calvin, however, Calvin indicated that a customer service number would be sent via

---

[4] This representation was meant to reinforce the false narrative that Solar Xchange was operating as a subcontractor for Eversource.

email.

42.     On the same date, October 22, 2020, at 10:13 a.m., an email was received by Plaintiff

from "Appointments.notification@five9.com" stating;

> Congratulations RICHARD DOANE,
> Your solar consultation has been set for 10:00 AM on 10/24/2020
> After performing the energy assessment, the consultant will be able to give you all the
> information you'll need about how solar could save you money. Please have a recent
> electric bill and any questions you may have handy.
> If you have any questions in the meantime, please reach out to us at (888) 439-1609.
> Thank you and we look forward to it!

43.     Plaintiff later attempted to call the 339-499-4100 back to see if it was a valid number.

Upon doing so, a message was played stating: "[t]he number you have dialed is not a working

number.  Please check the number and dial again."

44.     Plaintiff discovered by calling the telephone number that was provided in the email, 888-

439-1609, that the number belonged to Solar Xchange.  This confirmed that the Unsolicited Calls

that Plaintiff received were placed by Solar Xchange.

45.     The pre-set reply email identified energyxchange.scheduler@gmail.com.  Nowhere in the

e-mail Plaintiff received is either Solar Xchange or Vision Solar identified.

46.     On October 24, 2020, Plaintiff received a call from 717-844-5077, asking for "Mr.

Richard".  The agent stated that she was calling regarding a 10:00 a.m. appointment, and that

their representative was on his way and would be 15-20 minutes late.  At no time did the agent

identify herself as calling from or on behalf of Solar Xchange or Vision Solar.

47.     At 10:45 a.m. on October 24, 2020, a salesman, who parked a distance from Plaintiff's

property, greeted Plaintiff as he was approaching Plaintiff's front door.  Plaintiff asked for the

salesman's identification.  The salesman presented Plaintiff with his clip-on badge which

identified him as "Jaydeep Soni" with "Vision Solar.[5]"  Soni thereafter commenced to attempt to

sell Plaintiff solar panels.  At no time during this solicitation, which Plaintiff attempted to

terminate as expeditiously as possible, were Defendants either directly or indirectly given

consent or permission to call Plaintiff's Cell Phone for any purpose.

48.     On November 5, 2020, Plaintiff received an Unsolicited Call from 781-877-5757.  After

Plaintiff stated hello, and after a pause and audible click, an agent came on the line claiming to

be "John from Smart Solar."  The agent was reading from the same script and asked the same

questions as in the prior Unsolicited Calls.  Plaintiff never provided prior consent for this call.

49.     Plaintiff, during the November 5, 2020 call, could hear in the background other agents in

what seemed to be a busy call center.  Plaintiff heard one of these agents state on another call that

he was "John from Solar Solutions."

50.     The "John" who called Plaintiff seemed to be reading from the same script as the agent

heard in the background.  Plaintiff's "John" asked Plaintiff several questions, including the

identity of Plaintiff's electricity supplier, which Plaintiff revealed was Eversource.  Thereafter,

another agent got on the call who asked similar questions, and then stated he too would be

transferring the call.

51.     The call was then transferred, and a female agent picked up.  This agent identified

herself as "Laura" and falsely claimed to be working "alongside National Grid and Eversource

Energy."  Laura asked if she was speaking with the homeowner at 70 Blackthorn Road.  Plaintiff

advised Laura that this was one of his addresses.

52.     Laura then falsely stated the reason for her call was about the "clean energy mandate

going on in Massachusetts" and that she is "required to reach out to homeowners."  Laura falsely

---

[5] Plaintiff photographed the badge.

stated the call was about going solar with no money out of pocket and to get "40% off" the electric bill.  She asked about Plaintiff's credit rating and other information, and after Plaintiff answered, yet another agent got on the line who identified himself as "Corey, one of the supervisors."

53.     Corey, stated there were two addresses in his file concerning Plaintiff, 70 Blackthorn and 103 Prospect Street.  Corey continued to ask several questions, after which he falsely stated he was with an "energy assessment firm."  Plaintiff asked the agent what company he was with, to which he responded, "Energy Xchange."

54.     Plaintiff asked Corey if he could be reached at the number appearing on Plaintiff's Caller ID, and Plaintiff read the number off, to which the agent stated, "Yep."

55.     Plaintiff, for the sole purpose of further confirming that Solar Xchange was the party responsible for the Unsolicited Calls, agreed to an appointment on Saturday, November 7, 2020. Plaintiff asked who would be showing up at Plaintiff's door, to which Corey advised Plaintiff that it would be Energy Xchange.  Corey then stated that he would email Plaintiff to confirm the appointment, and the call was thereafter terminated.

56.     Following the call with Corey, Plaintiff attempted to call 781-877-5757 back and a message was played stating, "[y]ou have reached a nonworking number."

57.     On November 5, 2020, Plaintiff received an email confirming the appointment for November 7, 2020, at 10:00 a.m., from appointments.notification@five9.com.  The reply address in the email appeared as energyxchange.scheduler@gmail.com.

58.     On November 7, 2020, two individuals appeared at Plaintiff's residence at 103 Prospect Street.  The Plaintiff asked if they were with Solar Xchange, to which one of the agents stated, "We are not."  The other agent stated, "We get our appointments from Solar Xchange."  Plaintiff

told the agents that he had already met with Vision Solar, and Plaintiff showed the agents a photograph of the prior agent's badge, and advised the two agents that Plaintiff was informed that Solar Xchange would be appearing.  Plaintiff requested to see their identification, after which the agents presented a badge with the name "Vision Solar."  With Plaintiff present, the Vison Solar agent appeared to be calling his company and told his company that Plaintiff visited with Vision Solar before, and that he was expecting a different company.  The agent handed the phone to Plaintiff, and the agent on the phone asked a few questions.  Plaintiff asked who Solar Xchange was, and the agent stated, "Solar Xchange is our call center."

59.     As a direct and proximate result of Defendants' aforementioned illegal telemarketing activities, Plaintiff has suffered actual harm, including but not limited to, invasion of privacy, loss of concentration, loss of productivity, loss of sleep, annoyance, aggravation, emotional distress, diminished value and utility of his cell phone and subscription services, wear and tear to his cell phone, the loss of battery charge and battery life, and per-kilowatt electricity cost required to recharge his cellular telephone as a result of increased usage of his cell phone services.

60.     In addition to the foregoing, as a direct and proximate result of Defendants' aforementioned illegal telemarketing activities, Plaintiff was forced to identify those responsible to try and get the illegal activities to cease, and in the process of doing so incurred expense in time, materials, and use of equipment.

## COUNT I
### (Violations of the Telephone Consumer Protection Act, §227(c)(1) to (4))

61.     The allegations of paragraphs one (1) through sixty (60) of this Complaint are realleged and incorporated by reference.

62.     In 1991, Congress enacted the TCPA in response to a growing number of consumer

complaints regarding certain telemarketing practices.

63.     A private right of action exists pursuant to 47 U.S.C. § 227(c)(5) for violations of the regulations promulgated pursuant to the TCPA for the protection of telephone subscriber privacy rights.

64.     47 C.F.R. § 64.1200(c) and (d) set forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call.

65.     Defendants violated C.F.R. § 64.1200 et seq.  in the following respects:

        a.     By failing to ensure that Defendants maintained a do-not-call list in violation of 47 C.F.R. § 64.1200(d)(1);

        b.     By failing to provide Plaintiff, upon his demand, Solar Xchange's do-not-call policy in violation of 47 C.F.R. § 64.1200(d)(1);

        c.     By failing to ensure that Solar Xchange's personnel were informed and trained in the existence and use of the do-not-call list in violation of 47 C.F.R. § 64.1200(d)(2);

        d.     By failing to provide to Plaintiff the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and the telephone number or address at which the person or entity may be contacted in violation of 47 C.F.R. § 64.1200(d)(4); and

        e.     By engaging in and causing a pattern or practice of initiating telephone solicitations to Plaintiff's Cell Phone without Plaintiff's prior express written consent on at least fifteen (15) occasions in violation of 47 U.S.C. § 64.1200(c)(2).

66.     Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, Defendants are liable to Plaintiff for a minimum of $500 per violation of the TCPA, or not less than $7,500.00 for the not less than fifteen (15) violations thereof.

67.     Defendants' aforesaid conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, was willful and knowing.

68.     Plaintiff is entitled under this count to have his single damages of $7,500.00, trebled to $22,500.00, for these willful and knowing violations.

<u>**COUNT II**</u>
**Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A**
**And Request for Injunctive Relief**

69.     The allegations of paragraphs one (1) through sixty-eight (68) of this Complaint are realleged and incorporated by reference.

70.     At all times relevant, Defendants were engaged in trade or commerce within the meaning of M.G.L. c. 93A §2.

71.     940 C.M.R. § 3.16(4) provides that an act or practice violates M.G.L. c. 93A, §2 "if it violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other federal consumer protection statutes within the purview of M.G.L. c. 93A, s. 2."

72.     The TCPA was promulgated for the protection of consumers.

73.     940 C.M.R. §3.16(3) provides that an act or practice violates M.G.L. c. 93A, §2 "if it fails to comply with existing statutes, rules, regulations, or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection."

74.     The Massachusetts Telephone Solicitations Act, M.G.L. c. 159C et seq., (the "MTSA") and the regulations promulgated under the authority of the MTSA impose strict pre-conditions, limitations and restrictions on unsolicited telephonic sales calls made to Massachusetts residents, and any such calls not in compliance with any of these pre-conditions, limitations and restrictions are prohibited.

75.   The MTSA was promulgated by the Commonwealth for the protection of the consumers of the Commonwealth, including Plaintiff.

76.   Telephone solicitors engaging in unsolicited telephone sales calls to Massachusetts consumers are required to "properly register on an annual basis" with the Massachusetts Office of Consumer Affairs and Business Regulations (the "OCABR"). 201 C.M.R. § 12.04.

77.   At all times relevant, including but not limited to October and November 2020, neither Defendant was registered with the OCABR, as required by 201 C.M.R. § 12.04.

78.   By failing to comply with the registration requirement, Defendants failed to satisfy a basic, threshold requirement for conducting solicitations in Massachusetts and, thus violated the MTSA.

79.   Defendants directly and through their agent Telemarketers likewise violated the MTSA in connection with the calls complained-of herein in the following respects:

a.   By making unsolicited sales calls to Plaintiff without prior express consent or permission in violation of M.G.L. c. 159C, § 1;

b.   By calling Plaintiff after Plaintiff expressed his desire not to receive further calls, in violation of M.G.L. c. 159C, § 1;

c.   By calling Plaintiff on his Cell Phone while he was registered with the Massachusetts Do Not Call registry in violation of M.G.L. c. 159C, § 3 and 201 C.M.R. § 12.02(1);

d.   By making calls to Plaintiff without proper disclosure concerning the identity of the telemarketers and the ultimate seller in violation of M.G.L. c. 159C, § 5A and 201 C.M.R. § 12.02(7);

e.     By failing to keep and consult the Massachusetts Do Not Call registry prior to calling Plaintiff in violation of 201 C.M.R., §§ 12.04(3) and 12.02(6); and

f.     By using falsified and displaced caller identification in connection with the Unsolicited Calls to Plaintiff in order to circumvent the use of caller identification services or devices in violation of M.G.L. c. 159C, § 4 and 201 C.M.R., § 12.02(5).

80.     Defendants and their agent Telemarketers' numerous violations of the TCPA and MTSA (and the regulations promulgated thereunder) constitute unfair and deceptive conduct in violation of M.G.L. c. 93A, § 2.

81.     Defendants engaged in unfair and deceptive conduct, by knowingly and willfully employing telemarketers, who Defendants either knew or should have known utilized illegal practices and methods, in order to attempt to solicit Massachusetts consumers in violation of the TCPA and MTSA.

82.     Defendants, who chose to do business in Massachusetts, knew or should have known of the requirements and prohibitions of the TCPA and MTSA (and its underlying regulations) and the applicable provisions of the Massachusetts Privacy Act and Massachusetts common law. Accordingly, Defendants' violations of M.G.L. c. 93A, § 2 were willful and knowing.

83.     Defendants further engaged in unfair and deceptive conduct by knowingly, intentionally and repeatedly violating Plaintiff's right to privacy, recording conversations with Plaintiff without his knowledge or consent, misrepresenting that Solar Xchange was affiliated with National Grid and Eversource, and making false and unsubstantiated claims concerning the benefits and sponsorship of Vision Solar's solar products and services.

84.     As a direct and proximate result of the aforementioned violations of M.G.L. c. 93A, Plaintiff has suffered the harm set forth in paragraphs fifty-nine (59) and sixty (60) above and other like and serious harm in an amount to be established at trial.

85.     Plaintiff states upon information and belief that as of the filing of this Complaint, Defendants' unlawful conduct in violation of the TCPA, MTSA, and Chapter 93A is continuing. Said conduct, including the unsolicited, harassing and unlawful calls, as alleged herein, will continue, and will inflict further damage on Plaintiff and U.S. consumers, unless and until this Court, or another court of competent jurisdiction, issues an order directing Defendants to cease and desist from said conduct.

86.     Accordingly, while monetary damages may be sufficient to compensate Plaintiff and for past violations, injunctive relief is necessary in order to stop Defendants' unlawful course of conduct from continuing.

        **WHEREFORE**, as to all Counts, the Plaintiff requests that this Court:

1.      Enter judgment for Plaintiff and against Defendants, jointly and severally;

2.      Award Plaintiff his actual, compensatory, punitive and special damages to be determined at trial in an amount exceeding $150,000.00;

3.      Find that Defendants and their agent Telemarketers violated the TCPA, and award Plaintiff statutory damages of not less than $500 for each violation;

4.      Find that Defendants' violations of the TCPA were willful, and award Plaintiff statutory damages of not less than $1,500 for each violation;

5.      Find that Defendants and their agent Telemarketers' actions complained of were willful, knowing, intentional, unfair, and deceptive, in violation of M.G.L. c. 93A and award Plaintiff actual, statutory and/or multiple damages;

6.      Award Plaintiff his reasonable costs, expert fees, attorney fees and expenses;

7.      Issue a **permanent injunction**, enjoining Defendants from additional and continuing

violations of the TCPA, MTSA, and Chapter 93A, including but not limited to the use of

unregistered telemarketers;

8.      Order disgorgement of all Defendants' ill-gotten revenues; and

9.      Award Plaintiff pre-judgment interest and such other and further relief as Plaintiff may be

entitled at law or in equity.

  **PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.**


Dated: April 4, 2024


                                        ROBERT A. DOANE
                                        By his attorneys

                                        /s/RICHARD B. REILING
                                        RICHARD B. REILING, ESQ.
                                        BBO # 629203
                                        BOTTONE | REILING
                                        63 Atlantic Ave., 3rd Floor
                                        Boston, MA 02110
                                        Phone:      (617) 412-4291
                                        Facsimile:  (617) 412-4406
                                        richard@bottonereiling.com


                                        And

                                        /s/DAVID PASTOR
                                        David Pastor, Esq., BBO # 391000
                                        PASTOR LAW OFFICE, PC
                                        63 Atlantic Avenue, 3d Floor
                                        Boston, MA 02110
                                        Telephone: 617.742.9700
                                        Email:  dpastor@pastorlawoffice.com

# EXHIBIT A

1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    United States of America, and                 Case No. _____

10   State of Arizona, *ex rel.* Kristin K. Mayes,
     Attorney General,
11

12                         Plaintiffs,

13           v.                                      **STIPULATED ORDER FOR**
                                                     **PERMANENT INJUNCTION,**
14   Vision Solar LLC, a limited liability          **CIVIL PENALTY JUDGMENT,**
     company,                                        **AND OTHER RELIEF AS TO**
15                                                   **DEFENDANTS SOLAR XCHANGE**
                                                     **LLC AND MARK GETTS**
16   Solar Xchange LLC, a limited liability
     company, also d/b/a Energy Exchange, and
17

18   Mark Getts, individually and as an officer of
     Solar Xchange LLC,
19

20                         Defendants.

21

22          Plaintiffs, the United States of America, acting upon notification and authorization

23   to the Attorney General by the Federal Trade Commission ("Commission" or "FTC"),

24   and the State of Arizona *ex rel.* Kristin K. Mayes, Attorney General (the "State")

25   (collectively, "Plaintiffs") filed their Complaint for Permanent Injunction, Civil Penalties,

26   and Other Relief ("Complaint"), for a permanent injunction, civil penalties, and other

27   relief in this matter, pursuant to Sections 5(a), 5(m)(1)(A), 13(b), 19, and 16(a)(1) of the

28   Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, and 56(a)(1),

Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105, the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 44-1534 (the "ACFA"), and the Arizona Telephone Solicitations Act, A.R.S. §§ 44-1271 to 44-1282 (the "ATSA"). Defendants Solar Xchange LLC and Mark Getts ("Defendants") have waived service of the summons and the Complaint. Defendants have been advised of the right to a trial in this matter, and have waived the same. Plaintiffs and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

### FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendants participated in acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the FTC's Telemarketing Sales Rule (the "TSR"), as amended, 16 C.F.R. Part 310, and the above-listed Arizona state statutes in connection with the marketing of residential solar energy systems by, among other things: (a) falsely claiming during telemarketing calls that Defendant Solar Xchange LLC is affiliated with an electric utility or government entity; (b) making unsubstantiated claims regarding the cost savings associated with installing and using solar panels; (c) placing or causing to be placed telemarketing calls to consumers whose telephone numbers were on the National Do Not Call Registry; (d) causing phone numbers to ring, or engaging Persons in telephone conversations, repeatedly or continuously with the intent to annoy, abuse, or harass any Person at the called number.

3.     Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date

of this Order, and agree to bear their own costs and attorney fees.

5.     Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**Corporate Defendant**" means Solar Xchange LLC and its successors and assigns.

B.     "**Defendants**" means the Corporate Defendant and the Individual Defendant, individually, collectively, or in any combination.

C.     "**Entity-Specific Do Not Call List**" means a list of telephone numbers maintained by a Seller or Telemarketer of Persons who previously have stated that they do not wish to receive Outbound Telephone Calls made by or on behalf of the Seller or Telemarketer.

D.     "**Established Business Relationship**" means a relationship between a Seller and a consumer based on: (a) the consumer's purchase, rental, or lease of the Seller's goods or services or a financial transaction between the consumer and Seller, within the eighteen months immediately preceding the date of a Telemarketing call; or (b) the consumer's inquiry or application regarding a product or service offered by the Seller, within the three months immediately preceding the date of a Telemarketing call.

E.     "**Express Written Agreement**" means a written agreement that clearly evidences a Person's authorization that calls made by or on behalf of a specific party may be placed to that Person, and shall include the telephone number to which the calls may be placed and the signature of that Person.

F.     "**Individual Defendant**" means Mark Getts.

G.     "**Lead Generator**" means any Person that provides, in exchange for consideration, consumer information to a Seller or Telemarketer for use in the Telemarketing of any goods or services.

H.     "**Outbound Telephone Call**" means a telephone call initiated by a

3

Telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

I.      "**Person**" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

J.      "**Seller**" means any Person who, in connection with a Telemarketing transaction or Telephone Solicitation, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration, whether or not such Person is under the jurisdiction of the Commission.

K.      "**Telemarketer**" means any Person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor, whether or not such Person is under the jurisdiction of the Commission.

L.      "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones, and which involves more than one interstate telephone call.

M.      "**Telephone Solicitation**" means any voice communication from a live operator, announcing device or otherwise that offers merchandise for sale or rent and that is to or from a person located in Arizona.

## ORDER

### I.      Prohibition Against Misrepresentations

IT IS ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from misrepresenting or assisting others from misrepresenting, expressly or by implication:

A.      that Defendants are affiliated with a government entity or utility company;

B.      that consumers are being contacted because of any policy, directive, order, regulation, or program issued by a government entity or utility company; and

4

C.      any other fact material to consumers concerning any product or service, such as: the total costs, any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics, including the cost savings associated with installing or using solar panels.

## II.      Prohibition Against Deceptive Claims,
## Including False and/or Unsubstantiated Claims

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale solar panels and installation services, are permanently restrained and enjoined from making any representation, expressly or by implication, about the cost savings that consumers may accrue by installing and using solar panels at their homes, unless the representation is non-misleading, and, at the time such representation is made, Defendants possess and rely upon a reasonable basis for the representation.

## III.      Prohibitions on Abusive Telemarketing and Telephone Solicitations

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, in connection with Telemarketing or Telephone Solicitations, are permanently restrained and enjoined from engaging in, causing others to engage in, or assisting others engaging in, any of the following practices:

A.      Initiating any Outbound Telephone Call to any telephone number listed on the National Do Not Call Registry, unless the Defendant proves that the call was placed on behalf of a Seller to a Person from whom the Seller had:

1.      Obtained the Express Written Agreement to place calls to that Person; or

2.      An Established Business Relationship with such Person; and that

5

Person has not stated that he or she does not wish to receive Outbound Telephone Calls made by or on behalf of the Seller.

B.     Causing any telephone to ring, or engaging any Person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any Person at the called number.

C.     Initiating any Outbound Telephone Call to a Person when that Person previously has stated that he or she does not wish to receive an Outbound Telephone Call made by or on behalf of either the Seller whose goods or services are being offered, or made by or on behalf of the charitable organization for which a charitable contribution is being solicited.

D.     Failing to maintain an internal "do not call" list for Persons who previously have stated that they do not wish to receive an Outbound Telephone Call made by or on behalf of either the Seller whose goods or services are being offered, or made by or on behalf of the charitable organization for which a charitable contribution is being solicited.

E.     Violating the Telemarketing Sales Rule, 16 C.F.R. Part 310, attached as Appendix A.

## IV.     Lead Generator Review, Notice, and Termination

IT IS FURTHER ORDERED that:

A.     Defendants shall, within ninety (90) days of entry of this Order:

1.     Review and determine the methods used by Defendants' existing Lead Generators to obtain the leads sold or offered for sale to Defendants and, if any of those leads were obtained by means of an Outbound Telephone Call that does not comply with this Order, Defendants immediately shall cease purchasing leads from the Lead Generator unless and until Defendants confirm that the Lead Generator is in compliance pursuant to the requirements specified in Section IV.B. below;

2.     Provide, electronically or otherwise, Defendants' existing Lead Generators that use Outbound Telephone Calls to generate leads with (i) a copy of this Order; and (ii) a written notice stating that, if such Lead Generator sells any leads to

Defendants that do not comply with this Order, Defendants will immediately cease purchasing leads from such Lead Generator; and

   3. Request from all of Defendants' existing Lead Generators that have been provided notice pursuant to Section IV.A.2 above, an electronic acknowledgement or other signed and dated statement acknowledging receipt of this Order and the written notice set forth in the preceding subparagraph.  If any Lead Generator fails to provide Defendant with such an acknowledgement within ten (10) days of such a request, Defendant shall immediately cease purchasing leads from such Lead Generator.

  B. Prior to purchasing leads from any new Lead Generator, Defendants shall:

   1. Review and determine the methods used by the Lead Generator to obtain leads offered for sale to Defendants and, if any of those leads were obtained by means of a telephone call that does not comply with this Order, Defendants are prohibited from purchasing such leads;

   2. For any Lead Generator previously terminated pursuant to Section IV.A.1 above, conduct additional reviews, as specified in Section IV.B.1 above, on a quarterly basis for one (1) year to ensure continued compliance with this Order;

   3. Provide, electronically or otherwise, Defendants' Lead Generators that use Outbound Telephone Calls to generate leads with: (1) a copy of this Order; and (ii) a written notice stating that, if such Lead Generator sells any leads to Defendants that do not comply with this Order, Defendant will immediately cease purchasing leads from such Lead Generator; and

   4. Obtain from each new Lead Generator provided notice pursuant to Section V.B.3 above an electronic acknowledgement or other signed and dated statement acknowledging receipt of this Order and the written notice set forth in the preceding subparagraph.

## V. Monetary Judgment for Civil Penalty

IT IS FURTHER ORDERED that:

  A. Judgment in the amount of Thirteen Million Eight Hundred Fifty-Nine

1   Thousand, Two Hundred Eighty-Three Dollars ($13,859,283.00) is entered in favor of
2   Plaintiffs against the Corporate Defendant and the Individual Defendant, jointly and
3   severally, as a civil penalty.

4         B.    Defendants are ordered to pay to Plaintiff United States of America, by
5   making payment to the Treasurer of the United States, Sixty-Two Thousand Five
6   Hundred Dollars ($62,500.00).  Such payment must be made within 7 days of entry of
7   this Order by electronic fund transfer in accordance with instructions previously provided
8   by a representative of Plaintiff United States of America.

9         C.    Defendants are ordered to pay Plaintiff State of Arizona Sixty-Two
10   Thousand Five Hundred Dollars ($62,500.00).  Such payment must be made within 7
11   days of entry of this Order by electronic fund transfer in accordance with instructions
12   previously provided by a representative of Plaintiff State of Arizona.  The money will be
13   deposited into the Consumer Protection-Consumer Fraud Revolving Fund pursuant to
14   A.R.S. § 44-1531.01 and used for the purposes set forth therein.

15         D.    Upon completion of the payments required under Subsections V.B. and
16   V.C., the remainder of the judgment is suspended, subject to the Subsections below.

17         E.    The Commission's and Plaintiffs' agreement to the suspension of part of
18   the judgment is expressly premised upon the truthfulness, accuracy, and completeness of
19   Defendant's sworn financial statements and related documents (collectively, "financial
20   representations") submitted to the Commission, namely, the Declaration of Mark Getts
21   dated April 26, 2023, including attachments.

22         F.    The suspension of the judgment will be lifted as to any Defendant if, upon
23   motion by the Commission or any Plaintiff, the Court finds that such Defendant failed to
24   disclose any material asset, materially misstated the value of any asset, or made any other
25   material misstatement or omission in the financial representations identified above.

26         G.    If the suspension of the judgment is lifted, the judgment becomes
27   immediately due as to that Defendant in the amount specified in Subsection V.A. above
28   (which the parties stipulate only for purposes of this Section represents the amount of the

civil penalty for the violations alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## VI.    Additional Monetary Provisions

IT IS FURTHER ORDERED that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission or Plaintiffs in a proceeding to enforce their rights to any payment or monetary judgment pursuant to this Order.

C.      Defendants agree that the judgment represents civil penalties owed to the governments of the United States and the State of Arizona, is not compensation for actual pecuniary loss, and, therefore, as to the Individual Defendant, it is not subject to discharge under the Bankruptcy Code pursuant to 11 U.S.C. § 523(a)(7).

D.      Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## VII.   Customer Information

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

A.      disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant

9

obtained prior to entry of this Order in connection with Telemarketing or Telephone Solicitations based on a lead provided by a Lead Generator from whom Defendants are required to cease purchasing leads pursuant to Subsection IV.A. of this Order; and

B.     failing to destroy customer information referenced in Subsection VII.A. in all forms in their possession, custody, or control within 30 days after determining that the information was obtained from a Lead Generator from whom Defendants are required to cease purchasing leads pursuant to Subsection IV.A. of this Order.

## VIII.  Cooperation

IT IS FURTHER ORDERED that Defendants must fully cooperate with representatives of Plaintiffs and the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Defendants must provide truthful and complete information, evidence, and testimony. Individual Defendant must appear and Corporate Defendant must cause its officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Plaintiff or Commission representative may reasonably request upon ten (10) days written notice, or other reasonable notice, at such places and times as a Plaintiff or Commission representative may designate, without the service of a subpoena.

## IX.   Order Acknowledgments

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within 7 days of entry of this Order, must submit to the Commission and to the Arizona Attorney General's Office an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and

members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X.     Compliance Reporting

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission and to the State:

A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.     Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiffs may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendant must describe if he knows or should know due to his involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant

performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

      B.     For ten (10) years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

            1.     Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

            2.     Additionally, Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Individual Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

      C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

      D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

      E.     Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Solar Xchange LLC, Matter No. 2223063.

## XI.    Recordkeeping

IT IS FURTHER ORDERED that Defendants must create certain records for ten (10) years after entry of this Order, and retain each such record for five (5) years. Specifically, Corporate Defendant and Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

B.     Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     Records of all consumer complaints, whether received directly or indirectly, such as through a third party, and any response;

D.     Records of all Outbound Telephone Calls dialed by Defendants or on behalf of Defendants or their businesses by their vendors, contractors, or telecommunications providers, including for each call: (a) the number called; (b) the time and date of the call; (c) the duration of the call; and (d) any telephone number or IP address to which the call was forwarded or transferred;

E.     Copies of any Express Written Agreements obtained by the Defendants, whether directly or indirectly, or documentation of any Established Business Relationships, that correspond to all Outbound Telephone Calls made by or on behalf of Defendants to telephone numbers listed on the National Do Not Call Registry;

F.     Copies of any websites, emails, text messages, or other communications used by Defendants or any third party since entry of this Order to obtain Express Written

13

Agreements or create an Established Business Relationship for calls made by or on behalf of Defendants to telephone numbers listed on the National Do Not Call Registry.

G.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XII.    Compliance Monitoring

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer any assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission or Plaintiffs, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephone depositions), 31, 33, 34, 36, 45, and 69, provided that Defendants, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this Court seeking an order for one or more of the protections set forth in Rule 26(c).

B.    For matters concerning this Order, the Commission and Plaintiffs are authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission and Plaintiffs to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.    The Commission and Plaintiffs may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's

lawful use or compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

     D.    Upon written request from a representative of the Commission or Plaintiffs, any consumer reporting agency must furnish consumer reports concerning Individual Defendant pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XIII.  Retention of Jurisdiction

     IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

     This _____ day of _____, 2023.


_____

UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR THE UNITED STATES OF AMERICA**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General
Civil Division

AMANDA N. LISKAMM
Director, Consumer Protection Branch

RACHAEL L. DOUD
Assistant Director, Consumer Protection Branch

_____     Date: _____
July 14, 2023

Coleen Schoch
Nicole Frazer
Trial Attorneys
Consumer Protection Branch
Civil Division, U.S. Department of Justice
450 5th Street, NW, Suite 6400-South
Washington, DC 20044-0386
Telephone: (202) 305-7386
Facsimile: (202) 514-8742
Email: Coleen.schoch@usdoj.gov
Email: Nicole.Frazer@usdoj.gov

**FOR THE STATE OF ARIZONA**

KRISTIN K. MAYES
Attorney General, State of Arizona

_____   Date: _07/14/2023_
Laura Dilweg
Joseph Hubble
Assistant Attorneys General
Office of the Attorney General
2005 North Central Avenue
Phoenix, AZ 85004-1592
Telephone: (602) 542-7753
Telephone: (602) 542-8766
Facsimile: (602) 542-4377
Email: consumer@azag.gov
Email: Laura.Dilweg@azag.gov
Email: Joseph.Hubble@azag.gov


**FOR THE FEDERAL TRADE COMMISSION**

_____   Date: _07/14/2023_
Alan Bakowski
Robin Rock
Attorneys
Federal Trade Commission
233 Peachtree Street N.E., Suite 1000
(404) 656-1363; abakowski@ftc.gov
(404) 656-1368; rrock@ftc.gov

1

**FOR DEFENDANTS:**

2

3    Date: 5/2/2023

Isaac M. Gabriel

4    Dorsey & Whitney LLP

5    2398 E. Camelback Rd., Suite 760
Phoenix, AZ 85016

6    (602) 735-2702

7    gabriel.isaac@dorsey.com

8    *Counsel for Solar Xchange LLC and Mark Getts*

9

10

11   **DEFENDANTS:**

12

13    Date: 5/2/23

MARK GETTS
14   INDIVIDUALLY AND AS AN

15   OFFICER OF SOLAR XCHANGE LLC

16

17

18

19

20

21

22

23

24

25

26

27

28